UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Christina Brown, Individually and
as Trustee of the First Fisher Mountain
Trust, and David Deaver Brown</u>,
    Appellants/Cross-Appellees

   v.                                    Civil No. 08-cv-272-SM
                                           Opinion No. 2008 DNH 195

<u>Bradley C. Reifler and
Steven M. Notinger, Chapter 7
Trustee of Simply Media, Inc.
and David Deaver Brown</u>,
    Appellees/Cross-Appellants

**O R D E R**

This case arises out of the bankruptcies of David Deaver Brown and Simply Media, Inc. The parties have filed cross-appeals, challenging various aspects of the bankruptcy court's resolution of an adversary proceeding which was tried to the court in late 2007. In that adversary proceeding, Bradley C. Reifler, a creditor of Simply Media, and Steven Notinger, Trustee in Bankruptcy of David Deaver Brown and Simply Media, Inc. (collectively, the "trustee in bankruptcy"), sought to establish that two adjoining parcels of land in Thornton, New Hampshire (the "New Hampshire Property") should be treated as Deaver Brown's property and, therefore, included as assets of his bankruptcy estate. Additionally, the trustee sought to establish that Deaver and his wife, Christina, fraudulently transferred

assets of Simply Media, Inc. by diverting them from corporate to personal use.

## Standard of Review

Pursuant to 28 U.S.C. § 158(a), this court has jurisdiction to hear appeals from final judgments, orders, and decrees issued by the bankruptcy court.  On appeal, the bankruptcy court's legal determinations are reviewed de novo.  See, e.g., Dahar v. Jackson (In re Jackson), 459 F.3d 117, 121 (1st Cir. 2006); Askenaizer v. Seacoast Redimix Concrete, LLC, 2007 WL 959612, 2007 DNH 41 (D.N.H. March 29, 2007).  Findings of fact, however, are accorded much greater deference and will not be disturbed unless they are clearly erroneous.  Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002).  A factual finding "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).  "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently."  Id.

**Background**

The adversary proceeding tried before the bankruptcy court was, in many respects, a companion case to one tried to a jury earlier this year in this court. <u>Notinger v. Brown</u>, Civil No. 08-cv-05-SM. The court is, then, familiar with the underlying facts. The major difference between the two cases was this: in the adversary proceeding, the trustee sought to recover fraudulently transferred assets located in New Hampshire (the "NH case") while, in the case before this court, he sought to recover fraudulently transferred assets located in Massachusetts (the "MA case"). Otherwise, the factual background is identical and was previously described by this court as follows:

> This case arises out of a business operation that had all the earmarks of an old-fashioned investment scam. It was run by the defendant, Christina Brown, and her husband, Deaver Brown. The scheme proved to be highly effective, yet it was quite simple.
>
> First, the Browns formed Simply Media, Inc. Then, armed with apparently bogus profit and loss statements prepared by Deaver, a few sample products, and a compelling yarn of historical success woven by Deaver, the couple approached well-to-do friends and acquaintances and offered them the "opportunity" to own a portion of the company.
>
> Seduced by the fictitious profit and loss reports, and comforted by Deaver's personal charm and his tales of enormous sales through substantial retailers like Target, Walgreens, and Best Buy, investors parted with more than $1.6 million. The Browns used that money to pay for all manner of personal expenses including, for example, personal dry cleaning bills, individual memberships at an athletic club, and payments on the mortgage loan on their home. <u>See generally</u> Exhibit A

> to plaintiff's amended complaint. Not surprisingly, the capital was soon spent and the supply of gullible investors dried up. Simply Media was put into bankruptcy.
>
> The trustee in bankruptcy proceeded to inventory the corporation's assets and liabilities. That effort was, however, exceedingly difficult, as he soon discovered that the Browns deliberately and systematically destroyed nearly every relevant corporate document they ever received or generated – from checking account statements, to a list of investors, to the company's (claimed) inventory of products, to a statement of its (claimed) retail sales channels. Not surprisingly, the Browns provided no help. Eventually, however, the trustee was able to uncover a trail of checks written on the corporation's accounts — a trail that led to discovery of the Browns' use of company bank accounts as their own personal funds. This litigation to recover assets belonging to the company that Christina Brown used for personal expenses ensued.

Notinger v. Brown, 2008 DNH 188 at 1-2 (D.N.H. Oct. 6, 2008). The jury in the MA case returned a verdict in favor of the bankruptcy trustee, Notinger, and awarded total damages in the amount of approximately $2.9 million.[1]

---

[1] The jury awarded the bankruptcy trustee damages of slightly more than $1.1 million on his claim that Christina Brown fraudulently diverted assets of Simply Media to personal use. And, it awarded the trustee approximately $2.9 million on his claim that Christina conspired with Deaver and others to transfer money of Simply Media in order to hinder, delay, and/or defraud its creditors. As to the latter award, the court concluded that it was not supported by the evidence introduced at trial and offered plaintiff the option of having a new trial, limited exclusively to damages on that count, or a remitted award of $1.6 million. Plaintiff accepted the remitted award.

In the NH case, the bankruptcy trustee sought to "recover the New Hampshire Property and avoid Simply Media's transfers of monies on account of the New Hampshire Property, all for the benefit of creditors of both Deaver Brown's and Simply Media's bankruptcy estates." Notinger v. Brown, Bk. Adv. No. 06-1450-JMD, slip op. at 6 (Bankr. D.N.H. May 19, 2008) (the "Bankruptcy Decision").  The New Hampshire Property is comprised of two adjoining lots of land.  Parcel 67 consists of land and a house, title to which is held by Christina Brown, as trustee of the Fisher Mountain Trust.  Parcel 68 is a vacant lot, on which the septic system for the house on Parcel 67 is located.  Title to Parcel 68 is held by Christina Brown in her individual capacity.

As to the bankruptcy trustee's claim that both parcels of land comprising the New Hampshire Property should be treated as Deaver Brown's own property and, therefore, included as assets of his bankruptcy estate, the bankruptcy court ruled that: (1) Deaver Brown did not have a beneficial interest in Parcel 67 of the New Hampshire Property arising from the Fisher Mountain Trust and, instead, his interest was simply that of a tenant-at-will; and (2) Christina Brown holds Parcel 68 for Deaver Brown in both a resulting trust and a constructive trust and, therefore, Deaver's beneficial interest in Parcel 68 is part of his bankruptcy estate.  Bankruptcy Decision at 13, 16.

Finally, as to the bankruptcy trustee's efforts to avoid transfers of Simply Media's funds that were used to pay expenses associated with the New Hampshire Property, the court held that the trustee had proved that Simply Media paid at least $56,585.00 for such expenses and was entitled to recover that amount from Deaver Brown and Christina Brown, both individually and as trustee of the Fisher Mountain Trust.  Bankruptcy Decision at 28.

**Discussion**

I.   <u>Appellants/Cross-Appellees Assertions of Error</u>.

Appellants/Cross-Appellees (collectively, the "Browns") raise 18 challenges to the bankruptcy court's decision.  None has merit.  Particularly telling is the following: in criticizing the bankruptcy court's decision, the Browns repeatedly assert that "This cannot be the law," <u>see</u> Appellants' brief (documents no. 14 and 15) at 20, 26, 27, 29, 30, yet their appellate brief (which spans more than 42 pages and 80 footnotes) contains only two citations to legal precedent.[2]  From a legal standpoint, the Browns' appellate brief is not persuasive.

---

[2]   This tally does not include the Browns' periodic references to the "Mode[l] Corporation Act" or their repeated invocation of the allegedly applicable statute of limitations – statutory citations to neither of which are provided.  Nor does it include the cases cited in the "standard of review" section of the  brief, since that portion of their brief was copied from the appellate brief filed earlier by the trustee in bankruptcy.

Nearly half of the challenges the Browns raise relate to the bankruptcy court's factual determination that they purposefully and systematically destroyed all relevant personal and corporate financial records despite knowing that they had an obligation to retain such records, thereby prejudicing the trustee in bankruptcy's efforts to locate both assets and creditors of the bankrupt estates.  Based upon the Browns' spoliation and non-production of relevant evidence, the bankruptcy court drew the permissible inference that the contents of those missing documents would be unfavorable to the Browns' defense. Bankruptcy Decision at 26-27 (concluding, among other things, that "the Defendants' nonproduction and destruction of documents constitutes spoilation of evidence.  The Plaintiffs have satisfied the necessary foundational requirement by demonstrating that Deaver Brown and Christina Brown were aware that financial records should be retained, but, in utter disregard of the rights and interests of their creditors and governmental agencies, . . . they decided to discard such records, affording no one the opportunity to retrieve their personal records or those of Simply Media in order to check or verify anything."). See generally Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998) (discussing the concept of spoliation and the inferences that a trier-of-fact may draw when it has been shown that a party opponent has purposefully destroyed evidence known to be relevant

to ongoing or potential litigation); <u>Blinzler v. Marriott Int'l</u>, 81 F.3d 1148, 1158-59 (1st Cir. 1996) (same).

Despite their admitted practice of destroying all relevant personal and corporate records, the Browns actually assert that "[n]o spoliation occurred in this case," Appellants' brief at 3 – a claim that is entirely without legal or factual support. They go on to vigorously advance the misguided notion that, in essence, they cannot be found to have engaged in fraudulent conduct if they routinely (and thoroughly) destroyed nearly all relevant business and personal documents. Finally, they assert that Christina Brown's use of funds from Simply Media's corporate bank accounts to discharge personal debts was neither unlawful nor fraudulent since the corporation's board of directors never specifically prohibited her from using corporate assets in that manner.

The Browns' arguments are not based upon even a plausible interpretation of applicable law. The bankruptcy court thoroughly discussed the improper conduct in which the Browns engaged, carefully examined the governing precedent on the issues of spoliation and fraudulent diversion of corporate funds, and applied that law to the facts found in a way that was entirely

8

appropriate. See Notinger v. Brown, Bk. Adv. No. 06-1450-JMD, slip op. at 23-27 (Bankr. D.N.H. May 19, 2008).

The remaining issues pressed by the Browns are without merit or, at a minimum, are insufficiently compelling to warrant reversal of any factual findings or legal rulings made by the bankruptcy court. For that reason, as well as those set forth in the trustee in bankruptcy's brief (document no. 16), the Browns' requests for relief are denied.

## II. Appellees/Cross Appellants.

The trustee in bankruptcy raises four challenges to the Bankruptcy Decision, asserting that the bankruptcy court erred: (1) by relying upon inadmissible hearsay concerning the ownership of Parcel 67; (2) by crediting the testimony of Christina and Deaver Brown in determining the beneficiary(s) of the Fisher Mountain Trust; (3) by refusing to subject Parcel 67 to a constructive and/or resulting trust in favor of the trustee; and (4) by failing to add pre-judgment interest to its final award of damages.

### A. Evidentiary and Credibility Issues.

As to the first two issues advanced by the trustee in bankruptcy, this court's standard of review is quite deferential.

On appeal, a bankruptcy court's credibility findings and evidentiary rulings are reviewed for abuse of discretion. See, e.g., Alexander v. Hardeman (In re Alexander), 363 B.R. 917, 922 (10th Cir. 2007); Greener v. Cadle Co., 298 B.R. 82, 90 (N.D. Tex. 2003). See also United States v. Washington, 434 F.3d 7, 14 (1st Cir. 2006). Having carefully reviewed the bankruptcy court's credibility findings and its evidentiary rulings, and applying the deferential standard of review, the court cannot conclude that the trustee has prevailed with respect to either of his first two claims. See Pimentel v. Jacobsen Fishing Co., 102 F.3d 638, 639 (1st Cir. 1996) ("As a general rule, credibility determinations are rather well insulated from appellate challenge.").

    B.   Constructive and Resulting Trusts.

Under New Hampshire law, imposition of a constructive trust is only appropriate under limited and very specific circumstances:

> A constructive trust may only be imposed when clear and convincing evidence demonstrates a confidential relationship existed between two people, that one of them transferred property to the other, and that the person receiving the property would be unjustly enriched by retaining the property, regardless of whether the person obtained the property honestly. A confidential relationship exists if there is evidence of a family or other personal relationship in which one person justifiably believes that the other will act in his or her interest. A person may be unjustly enriched

> if he or she obtains title to property by fraud, duress, or undue influence, or violates a duty that arises out of a fiduciary relation to another.

<u>Cadle Co. v. Bourgeois</u>, 149 N.H. 410, 419-420 (2003) (emphasis supplied) (citations omitted).  <u>See also</u> <u>In re Estate of McIntosh</u>, 146 N.H. 474, 478-79 (2001).  A resulting trust, on the other hand, "arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that <u>he does not intend</u> that the person taking or holding the property should have the beneficial interest therein and where the inference is not rebutted.  Such a trust is presumed to arise when <u>one pays the consideration for a transfer</u> of real property <u>but has the title taken in the name of another</u>."  <u>Chamberlin v. Chamberlin</u>, 116 N.H. 368, 370 (1976) (emphasis supplied) (citations omitted).

The trustee asserts that, although the bankruptcy court properly subjected Parcel 68 to both a resulting and a constructive trust in his favor (that is, in his capacity as trustee of the estate of Deaver Brown), it erred by refusing to do the same with respect to Parcel 67.  But, as the bankruptcy court pointed out, there are substantial differences in the manner by which title to those lots was acquired.

Deaver Brown originally held title to both lots and used the New Hampshire property as his primary residence, while Christina Brown used the Massachusetts property as her primary residence. In 1991, Deaver transferred title to Parcel 68 to Christina, for nominal consideration. The bankruptcy court found that the transfer to Christina was for the purpose of securing ownership of the parcel for Deaver's benefit and the parties understood that he would continue to use the property as his own. Although Christina testified that the transfer was done for estate planning purposes, the bankruptcy court disregarded that testimony, finding it not credible. And, given the timing of the transfer, it was reasonable to infer that it was effected to shelter/hide Deaver's assets from his creditors.[3] It was, then, entirely supportable for the bankruptcy court to subject Parcel 68 to both a resulting and a constructive trust for the benefit of Deaver (or, more accurately, his bankruptcy estate).

Transfer of Parcel 67 to the Fisher Mountain Trust involved quite different circumstances. In 1991, Deaver Brown's mortgagee foreclosed and the property was purchased at auction by the Fisher Mountain Trust. That trust was created by George Warshaw,

---

[3] Just four months prior to the transfer, Deaver had been sued. That suit eventually settled when, after the transfer of Parcel 68 to Christina had been completed, Deaver agreed to the entry of a $200,000 judgment against him.

an attorney for Christina, and he acted as the original trustee. The only evidence introduced at trial on the issue established that Christina is a beneficiary of that trust. The trust purchased Parcel 67 with funds provided by Christina Brown and her mother. Approximately ten months later, Deaver Brown replaced Attorney Warshaw as trustee of the Fisher Mountain Trust. And, approximately four months after Deaver filed his bankruptcy petition, he was replaced by Christina as trustee.

In its ruling, the bankruptcy court noted that the "major difference between [Christina's] acquisition of the two parcels is the evidence of <u>consideration</u> paid to a <u>third party</u> in connection with the acquisition of Parcel 67 at foreclosure in contrast to a complete absence of evidence of any consideration for either the 1988 or 1991 transfers to her of Parcel 68." Bankruptcy Decision at 15 (emphasis supplied). The fact that consideration was paid for the acquisition of Parcel 67, combined with the lack of evidence indicating that the Fisher Mountain Trust was void or a sham, support the bankruptcy court's conclusion that the trustee failed to prove, by clear and convincing evidence, that a resulting or constructive trust should be imposed on that property. So, too, does the fact that there was not a confidential relationship between the seller of the property (the bank/mortgagee) and the purchaser at

foreclosure (Fisher Mountain Trust).  <u>See, e.g.</u>, <u>In re Estate of McIntosh</u>, 146 N.H. at 479 (refusing to impose a constructive trust on an IRA account because, among other things, there was no confidential relationship between the relevant parties).

    C.   <u>Pre-judgment Interest</u>.

Finally, the trustee asserts that the bankruptcy court erred in failing to include pre-judgment interest in the final judgment entered on May 19, 2008 (Bankr. document no. 139).  The Browns do not argue otherwise.  Pre-judgment interest is to be added by the clerk in a case like this and such an award is understood to be part of the judgment by operation of law.  <u>See</u> N.H. Rev. Stat. Ann. ch. 524.  The amount is easily calculated and should not be a matter of mathematical dispute.

**Conclusion**

The trustee in bankruptcy's motion to dismiss the Browns' appeal based upon the untimely filing of their appellate brief (document no. 13) is denied.  However, the court has not considered the Browns' untimely reply brief (documents no. 17 and 18).  <u>See generally</u> Bankruptcy Rule 8009(a).

For the reasons set forth above, the decision of the bankruptcy court dated May 19, 2008, is affirmed in all

substantive respects.  The matter is remanded to the bankruptcy court in one respect, however.  The final judgment should be conformed to the applicable statute providing for the addition of pre-judgment interest, in the amount allowed by law, to the damages award.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 23, 2008

cc:   James V. Tabner, Esq.
      Douglas A. Grauel, Esq.
      Bruce A. Harwood, Esq.
      Stephen F. Gordon, Esq.
      Todd B. Gordon, Esq.
      Geraldine L. Karonis, Esq.